UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY SELLERS, individually and on behalf of other similarly situated employees, | Case No. 1:18-cv-07179 |
| Plaintiffs, | Hon. Rebecca R. Pallmeyer |
| v. | |
| EXELON CORPORATION, WORK MANAGEMENT, INC., BUCHER & CHRISTIAN CONSULTING, INC., and MAXETA TECHNOLOGIES, INC. | |
| Defendants. | |

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

SUMMARY

1.      Gregory Sellers (Sellers), Karen Potts (Potts), Paul Troia (Troia), and Alan Crary (collectively, "Plaintiffs") and other workers like them (collectively, the "Straight Time Workers") were not paid overtime as required by the Fair Labor Standards Act (FLSA) for work they performed for Exelon Corporation (Exelon), either directly or through staffing companies such as Work Management, Inc. (WMI), Bucher & Christian Consulting, Inc. (BCC), and Maxeta Technologies, Inc. (Maxeta) (collectively, "Defendants").

2.      Doing business in 48 states, Exelon bills itself as the nation's leading competitive energy provider.[1]

---

[1] http://www.exeloncorp.com/company/about-exelon (last visited February 25, 2019).

3.      According to Exelon, it had revenues of $33.5 billion in 2017.[2]

4.      Exelon employs approximately 34,000 people nationwide.[3]

5.      Plaintiffs and the similarly situated Straight Time Workers are those Exelon employees who were paid the same hourly rate for all hours worked, including those in excess of 40 hours in a workweek (regardless of staffing company).

6.      To avoid paying the Straight Time Workers overtime, Defendants uniformly misclassified them as exempt from overtime provisions of the FLSA and numerous applicable state laws.

7.      Plaintiffs bring this lawsuit to recover unpaid overtime on behalf of themselves and all Straight Time for Overtime Workers who elect to opt-in to this action.

8.      Plaintiff Potts also brings this action on behalf of herself and similarly situated Straight Time Workers in Pennsylvania pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the Pennsylvania Minimum Wage Act ("PMWA").

9.      Plaintiffs Troia and Crary also bring this action on behalf of themselves and similarly situated Straight Time Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law ("NYLL").

### JURISDICTION AND VENUE

10.     This Court has original jurisdiction under 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331(a) because this Action involves a federal question under the FLSA.

11.     This Court has original jurisdiction over this Action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

---

[2] *Id.*

[3] *Id.*

12.     This Court also has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

13.     The total number of all potential class members far exceeds 100.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

15.     Exelon's corporate headquarters is located in this District and Division.

16.     Upon information and belief, WMI regularly assigns workers to Exelon in this District and Division.

17.     Upon information and belief, WMI entered into its contract for the provision of workers to Exelon in this District and Division.

18.     Since 2013, BCC has been registered to do business in Illinois.

19.     Upon information and belief, BCC regularly assigns workers to Exelon in this District and Division.

20.     Upon information and belief, BCC entered into its contract for the provision of workers to Exelon in this District and Division.

21.     Since 2015, Maxeta has been registered to do business in Illinois.

22.     Upon information and belief, Maxeta regularly assigns workers to Exelon in this District and Division.

23.     Upon information and belief, Maxeta entered into its contract for the provision of workers to Exelon in this District and Division.

## THE PARTIES

### Gregory Sellers

24.     Sellers is an adult individual who is a resident of the State of Texas.

25.    During the operative period, Sellers was an employee of Exelon and WMI as defined by the FLSA.

26.    At all relevant times, Exelon and WMI were Sellers' employers as defined in the FLSA.

27.    Sellers worked as a Start-up Director/Manager for Exelon from September 2015 until January 2018.

28.    Sellers was staffed to Exelon by WMI.

29.    Sellers worked for Exelon at its Wolf Hollow II power plant in Granbury, Texas. http://www.exeloncorp.com/locations/power-plants/wolf-hollow-ii (last visited February 18, 2019).

30.    While working for Exelon, Sellers was paid the same hourly rate for all hours worked (including those hours in excess of 40 hours in a single workweek) with no overtime compensation.

31.    Sellers' written consent is on file with the Court.

32.    Sellers performed day-to-day power plant maintenance for Exelon.

33.    Sellers attended meetings scheduled and conducted by Exelon.

34.    Sellers verified equipment was installed and working properly at the power plant owned by Exelon.

35.    Sellers tracked Exelon's power plant systems.

36.    If the systems weren't working properly, Sellers notified his supervisors at Exelon.

37.    Sellers submitted claim warranties on equipment and motors that were not working properly while employed by Exelon.

38.    Sellers reported to Jeff Klier, an Exelon employee, on a daily basis.

39.    Sellers also regularly reported to Mark Debruis, an Exelon employee.

40.    Sellers also habitually reported his hours to Dean Munsy, an WMI employee.

41.    Sellers reported his time to WMI, which Exelon had to approve.

42.    WMI paid Sellers for the work he performed for Exelon.

43. Sellers brings this action on behalf of himself and all other similarly situated hourly employees paid straight time for overtime, under the collective action provisions of the FLSA. *See* 29 U.S.C. §216(b). The class of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

> **All individuals who worked for Exelon (whether directly or through third-party entities) during the past three years who were paid the same hourly rate for all hours worked (including those hours in excess of 40 hours in single workweek), or, "straight time for overtime" (the "FLSA Class").**

44. The FLSA Class members are easily ascertainable from Exelon and WMI's business and personnel records.

**Karen Potts**

45. Potts is an adult individual who is a resident of the State of Louisiana.

46. During the relevant period, Potts was an employee of Exelon as defined by the FLSA and PMWA.

47. At all relevant times, Exelon was Potts' employer as defined in the FLSA and PMWA.

48. Exelon directly hired Potts.

49. Potts worked for Exelon as Cost Controller and Project Facilitator from March 2016 to January 2017.

50. Potts worked for Exelon at its Peach Bottom Atomic Power Station. http://www.exeloncorp.com/locations/power-plants/peach-bottom-atomic-power-station. (last visited February 25, 2019).

51. Her written consent is attached as Exhibit A.

52. Potts worked with Exelon's capital projects groups to create budgets and project costs.

53. Potts reported directly to Exelon supervisors.

54. Exelon paid Potts directly.

55. Potts seeks certification of a class under FED. R. CIV. P. 23 to remedy Exelon's

violations of the PMWA.

56.     The class of similarly situated employees sought to be certified as a class action under the PMWA is defined as:

> **All employees who worked for Exelon (whether directly or through third party entities) in Pennsylvania during the past 3 years who were paid the same hourly rate for all hours worked (including those hours in excess of 40 hours in single workweek), or, "straight time for overtime" (the "Pennsylvania Class").**

57.     The Pennsylvania Class members are easily ascertainable from Exelon's business and personnel records.

**Paul Troia**

58.     Troia is an adult individual who is a resident of the State of New York.

59.     During the relevant period, Troia was an employee of Exelon and BCC as defined by the FLSA and NYLL.

60.     At all relevant times, Exelon and BCC were Troia's employer as defined in the FLSA and NYLL.

61.     Troia worked for Exelon as a Technical Writer from January 2017 until the end of March 2017.

62.     Troia was staffed to Exelon by BCC.

63.     Troia worked for Exelon at its James A. Fitzpatrick Nuclear power plant in Oswego, New York. http://www.exeloncorp.com/locations/power-plants/james-a-fitzpatrick-nuclear-power-plant. (last visited February 25, 2019).

64.     Troia collected information from engineering drawings, specifications, test reports, and vendor data.

65.     Troia attended required meetings scheduled and conducted by Exelon engineers and technicians.

66.     Troia reported his time to BCC, which Exelon approved.

67. Although BCC formally paid Troia for the work he performed for Exelon, BCC did so with money that came from Exelon for the purposes of paying Troia.

68. Troia's written consent is attached as Exhibit B.

**Alan Crary**

69. Crary is an adult individual who is a resident of the State of New York.

70. During the operative time period, Crary was an employee of Exelon and Maxeta as defined by the FLSA.

71. At all relevant times, Exelon and Maxeta were Crary's employers as defined in the FLSA.

72. Crary worked as a Schedule Analyst for Exelon from January 2017 until May 2017.

73. Crary was staffed to Exelon by Maxeta.

74. Crary worked for Exelon at its James A. Fitzpatrick Nuclear power plant in Oswego, New York. http://www.exeloncorp.com/locations/power-plants/james-a-fitzpatrick-nuclear-power-plant. (last visited February 25, 2019).

75. While working for Exelon, Crary was paid the same hourly rate for all hours worked (including those hours in excess of 40 hours in a single workweek) with no overtime compensation.

76. His written consent is attached as Exhibit C.

77. Crary attended meetings scheduled and conducted by Exelon.

78. Crary verified software was installed and working properly at the power plant owned by Exelon.

79. Crary would also provide scheduling pursuant to Exelon's requests.

80. If the software was not working properly, Crary notified his supervisors at Exelon.

81. Crary reported his time to Maxeta, which Exelon had to approve.

82. Although Maxeta formally paid Crary for the work he performed for Exelon, Maxeta

did so with money that came from Exelon for the purposes of paying Crary.

83.    Troia and Crary seek certification of a class under FED. R. CIV. P. 23 to remedy Defendants' violations of the NYLL.

84.    The class of similarly situated employees sought to be certified as a class action under the NYLL is defined as:

> **All employees who worked for Exelon (whether directly or through third party entities) in New York during the past 3 years who were paid the same hourly rate for all hours worked (including those hours in excess of 40 hours in single workweek), or, "straight time for overtime" (the "New York Class").**

85.    The New York Class members are easily ascertainable from Exelon, BCC, and Maxeta's business and personnel records.

**Defendants**

86.    Exelon is a full-service provider of power plant services.

87.    Exelon owns and operates power plants throughout the nation.

88.    WMI provides the infrastructure to support the management and implementation of many of the core Standard Nuclear Performance Model processes.[4]

89.    BCC is a global consulting and workforce fulfillment firm that provides services and resourcing for businesses and government organizations.

90.    Maxeta helps companies automate business processes through the software it develops.

91.    To provide its services, Exelon hires workers (either directly or through third-party entities like, but certainly not limited to, WMI, BCC, and Maxeta) who are paid on an hourly basis.

---

[4] http://www.workmanagementinc.com/services/ (last visited February 16, 2019).

92. When these workers work for Exelon through third-party entities like WMI, BCC, and Maxeta; Exelon and the third-party entities co-determine and share control over the terms and conditions of employment.

93. When these workers work for Exelon through third-party entities like WMI, BCC, and Maxeta, Exelon and the third-party entities jointly hire and fire, supervise and control, set pay, determine hours, and approve time sheets with respect to these workers.

94. Exelon makes the determination whether to hire or not hire a potential employee from a third-party entity, like WMI, BCC, and Maxeta.

95. When these workers work for Exelon through third-party entities, Exelon is an employer, and/or a joint employer, of the individuals working for Exelon through third-party entities.

96. For example, Exelon and WMI shared substantial control of Sellers' working conditions, and over the unlawful policies and practices alleged herein.

97. Exelon and BCC shared substantial control of Troia's working conditions, and over the unlawful policies and practices alleged herein.

98. Exelon and Maxeta shared substantial control over Crary's working conditions, and over the unlawful policies and practices alleged herein.

99. As a joint employer, at all relevant times, Exelon maintained control, oversight, and direction over Plaintiffs and the Straight Time Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

100. On information and belief, Exelon exercises policymaking over each of the Defendants, including but not limited to control regarding the payment of wages.

101. Exelon applies the same employment policies, practices, and procedures to all Straight Time Workers at their locations throughout the United States, regardless of whether they are employed directly by Exelon.

102.    Exelon is a Pennsylvania corporation. Exelon Corporation has made an appearance in this matter.

103.    WMI may be served with process by serving its registered agent at Business Filings Incorporated, 701 Brazos Street, Suite 720, Austin, Texas 78701.

104.    BCC may be served with process by serving its registered agent Justin P. Christian at 9777 N. College Ave., Indianapolis, Indiana 46280.

105.    Maxeta may be served with process by serving its President, James N. Brouillette, at 45 Tamarack Circle, Skillman, New Jersey 08558.

COVERAGE UNDER THE FLSA

106.    At all relevant times, Defendants were employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

107.    At all relevant times, Defendants were enterprises within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

108.    At all relevant times, Defendants were enterprises engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because they had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, walkie-talkies, hardhats, and personal protective equipment - that have been moved in or produced for commerce.

109.    At all relevant times, Defendants have had and has an annual gross volume of sales made or business done of not less than $1,000,000 each.

110.    At all times hereinafter mentioned, Plaintiffs and the Straight Time Workers were engaged in commerce or in the production of goods for commerce.

## THE FACTS

111.    Defendants paid each Plaintiff according to Exelon's "straight time for overtime" policy.

112.    During the relevant period, Plaintiffs worked for Exelon as hourly employees.

113.    Exelon set Plaintiffs' schedule.

114.    Plaintiffs were paid by the hour, either by Exelon directly or by the third-party staffing companies who sourced workers to Exelon.

115.    Sellers was paid $90 per hour for hours approved by Exelon.

116.    Troia was paid $95 per hour for hours approved by Exelon.

117.    Crary was paid $75 per hour for hours approved by Exelon.

118.    Plaintiffs reported the hours they worked to Defendants on a regular basis.

119.    If Plaintiffs worked fewer than 40 hours in a week, they would be paid only for the hours they actually worked.

120.    For example, in the two-week period ending on August 13, 2017, Sellers worked 29 hours.

121.    Sellers worked less than 40 hours each week during this two-week period.

122.    For those two weeks, Exelon, through WMI, paid Sellers for 29 hours at his regular hourly rate of $90.

| PAY | QTY | Rate | Current |
|---|---|---|---|
| Hourly Rate 1 | 29.00 | $90.00 | $2,610.00 |
| Taxable Per Diem | | | $1,330.00 |
| Company LTD True-up | | | $27.86 |

123.    But Plaintiffs regularly worked more than 40 hours in a week.

124. For example, in the two-week period ending on August 27, 2017, Sellers worked 108 hours.

125. For those two weeks, Exelon, through WMI, paid Sellers for 108 hours at his regular hourly rate of $90.

| PAY | QTY | Rate | Current |
|---|---|---|---|
| Taxable Per Diem | | | $1,330.00 |
| Hourly Rate 1 | 108.00 | $90.00 | $9,720.00 |
| Company LTD True-up | | | $27.86 |

126. In one or both of those two weeks, Sellers worked over 40 hours.

127. Similarly, Potts regularly worked 50 hours each week.

128. Exelon paid Potts the same hourly rate, regardless of the number of hours she worked in a given day or workweek.

129. Within the past 3 years, Exelon employed Potts in Pennsylvania during at least one week in which she worked more than 40 hours.

130. Upon information and belief, Exelon employed more than 100 Straight Time Workers in Pennsylvania in the last 3 years.

131. Likewise, Troia regularly worked over 40 hours each week while employed by Exelon.

132. Troia was paid the same hourly rate regardless of the number of hours he worked in a given day or workweek.

133. Within the past 3 years, Exelon, through BCC, employed Troia in New York during at least one week in which she worked more than 50 hours.

134. Crary regularly worked over 50-60 hours each week while employed by Exelon.

135.    Crary was paid $75 per hour regardless of the number of hours he worked in a given day or workweek.

136.    Within the past 3 years, Exelon, through Maxeta, employed Crary in New York during at least one week in which she worked more than 40 hours.

137.    Upon information and belief, Exelon, BCC, and Maxeta employed more than 60 Straight Time Workers in New York in the last 3 years.

138.    The hours Plaintiffs worked are reflected in their payroll records, which have or should have been maintained by Defendants in the ordinary course of business.

139.    Exelon, either directly or through third-parties, paid Plaintiffs the same hourly rate for all hours worked, including for those hours in excess of 40 hours in a single workweek.

140.    Plaintiffs did not receive overtime for all hours worked in excess of 40 hours in a single workweek while working for Defendants.

141.    Rather than receiving time and half as required by the FLSA, Plaintiffs only received "straight time" pay for overtime hours worked.

142.    This "straight time for overtime" payment scheme violates the FLSA, PWMA, and NYLL.

143.    Defendants paid Plaintiffs on an hourly basis.

144.    Defendants never guaranteed Plaintiffs a minimum weekly salary irrespective of days or hours worked.

145.    Defendants did not pay Plaintiffs on a salary basis.

146.    Defendants were aware of the overtime requirements of the FLSA, PWMA, and NYLL.

147.    Nevertheless, the hourly employees like Plaintiffs did not receive overtime while working for Exelon through staffing companies like WMI, BCC, and Maxeta.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

148. The illegal pay practices imposed on Plaintiffs were imposed on members of the FLSA Class, Pennsylvania Class, and New York Class.

149. Sellers, Potts, and Troia, and Crary bring the First Cause of Action on behalf of themselves and the FLSA Class.

150. Potts brings the Second Cause of Action, an overtime claim under the PMWA, on behalf of herself and the Pennsylvania Class.

151. Troia and Crary bring the Third Cause of Action, an overtime claim under the NYLL, on behalf of themselves and the New York Class.

152. The Pennsylvania Class and New York Class are collectively referred to as the State Law Classes.

153. The illegal straight time for overtime policy Defendants imposed on Plaintiffs was likewise imposed on the FLSA Class and State Law Classes.

154. The members of the FLSA Class and the State Law Classes are geographically diverse and spread throughout the country.

155. The members of the FLSA Class and the State Law Classes were victimized by the straight time for overtime policy which is in willful violation of the FLSA and the state overtime laws referenced in this complaint.

156. Defendants regularly assigned members of the FLSA Collective and the State Law Classes to work away from their homes.

157. Based on their experiences and tenure with Defendants, Plaintiffs are aware that Defendants' illegal practices were imposed on other members of the FLSA Class and State Law Classes.

158. The FLSA Class and State Law Classes were denied overtime when they worked more than 40 hours per week.

159. Defendants' failure to pay overtime at the rates required by state and/or federal law result from a generally applicable, systematic policy which is not dependent on the personal circumstances of the FLSA Class and State Law Classes.

160. Plaintiffs' experiences are therefore typical of the experiences of the FLSA Class and State Law Classes.

161. The specific job titles or precise job locations of the various members of the FLSA Class and State Law Classes do not prevent class or collective treatment.

162. Plaintiffs have no interests contrary to, or in conflict with, the FLSA Class and State Law Classes that would prevent class or collective treatment.

163. Like each member of the FLSA Class and State Law Classes, Plaintiffs have an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

164. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

165. Absent a class and collective action, many members of the FLSA Collective and State Law Classes will not obtain redress of their injuries and Defendants will reap the unjust benefits of violating the FLSA and applicable state labor law.

166. Furthermore, even if some of the FLSA Class and State Law Classes could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

167. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the FLSA Class and State Law Classes and provide for judicial consistency.

168. The questions of law and fact common to each of the FLSA Class and State Law Classes predominate over any questions affecting solely the individual members.

169.    Among the common questions of law and fact are:

a. Whether Defendants employed the members of the Class within the meaning of the applicable state and federal statutes, including the FLSA, NYLL, and the PMWA;

b. Whether Defendants' violation of the FLSA, NYLL, and/or the PMWA resulted from a continuing course of conduct;

c. Whether Defendants' decision to pay straight time for overtime to hourly workers was made in good faith;

d. Whether Defendants' decision to not pay time and a half for overtime to the members of the FLSA Collective and State Law Classes was made in good faith;

e. Whether Defendants paid members of the FLSA Collective and State Law Classes on a salary basis;

f. Whether Defendants' violations of the FLSA and/or NYLL were willful; and

g. Whether Defendants' illegal pay practice applied to the FLSA Class and State Law Classes.

170.    Plaintiffs and the FLSA Class and State Law Classes sustained damages arising out of Defendants' illegal and uniform employment policy.

171.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

172.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' records and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

173.    Defendants are liable under the FLSA, PMWA, and NYLL for failing to pay overtime to Plaintiffs, the FLSA Class, and the State Law Classes.

174.     Consistent with Defendants' straight time for overtime policy, Plaintiffs and members of the FLSA Class and State Law Classes were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

175.     As part of a regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, PMWA, and NYLL with respect to Plaintiffs and members of the FLSA Class and State Law Classes.

176.     Defendants' illegal straight time for overtime policy deprived Plaintiffs, the FLSA Class, and the State Law Classes of the premium overtime wages they are owed under state and federal law.

177.     Each defendant was aware, or should have been aware, that federal and/or state law required them to pay Plaintiffs and members of the FLSA Class and State Law Classes overtime premiums for all hours worked in excess of 40 per workweek.

178.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA, PMWA, and NYLL.

179.     Numerous Straight Time Workers who worked with Plaintiffs (including in Pennsylvania and New York) were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

180.     Based on their experiences and tenure with Defendants, Plaintiffs are aware that these illegal practices were imposed on members of the FLSA Class as well as members of the State Law Classes.

181.     The members of the FLSA Class and State Law Classes were not paid overtime when they worked in excess of 40 hours per week.

182.     The failure to pay overtime at the rates required by state and federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the FLSA Class or State Law Classes.

183.     Plaintiffs' experiences are therefore typical of the experiences of members of the FLSA Class and State Law Classes.

184.     The specific job titles or precise job locations of the various members of the FLSA Class or State Law Classes do not prevent collective treatment.

185.     Plaintiffs have no interests contrary to, or in conflict with, the members of the FLSA Class or State Law Classes.

186.     Like each member of the FLSA Class and State Law Classes, Plaintiffs have an interest in obtaining the unpaid overtime wages owed under federal law.

187.     The precise size and the identity of other members of the FLSA Class and State Law Classes is ascertainable from the business records, tax records, and/or employee or personnel records maintained by Exelon or the third-parties like WMI and BCC who provided workers to Exelon.

### FIRST CAUSE OF ACTION – FLSA OVERTIME WAGES
### (BROUGHT BY PLAINTIFFS AND THE FLSA CLASS)

188.     The failure to pay Plaintiffs and the FLSA Class at one-and-one-half times their regular rates violated the FLSA's overtime provisions.

189.     Defendants owe Plaintiffs and the FLSA Class overtime pay at the proper overtime rate.

190.     Defendants did not make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Class.

191.     Because Defendants knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Defendants owe these wages for at least the past three years.

18

192.     Defendants are liable to Plaintiffs and the FLSA Class for an amount equal to all unpaid overtime wages as liquidated damages.

193.     Plaintiffs and the FLSA Class are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## SECOND CAUSE OF ACTION – PMWA OVERTIME WAGES
### (BROUGHT ON BEHALF OF POTTS AND THE PENNSYLVANIA CLASS)

194.     The overtime provisions of the PMWA and its supporting regulations apply to Exelon and protect Potts and the Pennsylvania Class.

195.     Exelon and any third-party company that sourced Straight Time Workers to work for Exelon in Pennsylvania failed to pay Potts and the Pennsylvania Class the premium overtime wages to which they were entitled under the PMWA – at a rate of 1.5 times their regular rate of pay – for all hours worked beyond 40 per workweek.

196.     Through its failure to pay Potts and the Pennsylvania Class the appropriate overtime wages for hours worked in excess of 40 hours per workweek, Exelon willfully violated the PMWA, 43 P.S. § 333.104(c).

197.     Due to Exelon's willful violations of the PMWA, Plaintiff Potts and the Pennsylvania Class are entitled to recover from Exelon their unpaid overtime wages and reasonable attorneys' fees and costs pursuant to the PMWA.

## THIRD CAUSE OF ACTION – NYLL OVERTIME WAGES
### (BROUGHT ON BEHALF OF TROIA, CRARY, AND THE NEW YORK CLASS)

198.     The overtime provisions of the NYLL and its supporting regulations apply to Defendants and protect Troia, Crary, and the New York Class.

199.     Exelon, BCC, and Maxeta failed to pay Troia, Crary, and the New York Class the premium overtime wages to which they were entitled under the NYLL – at a rate of 1.5 times their regular rate of pay – for all hours worked beyond 40 per workweek.

200. Through its knowing or intentional failure to pay Troia, Crary, and the New York Class the appropriate overtime wages for hours worked in excess of 40 hours per workweek, Exelon, BCC, and Maxeta willfully violated the NYLL, Article 19, § 650 et seq., and supporting New York State Department of Labor regulations.

201. Due to Exelon, BCC, and Maxeta's willful violations of the NYLL, Plaintiffs Troia, Crary, and the New York Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs pursuant to the NYLL.

**PRAYER**

202. Plaintiffs, individually, and on behalf of themselves and the FLSA Class and the State Law Classes, respectfully requests that this Court grant the following relief:

    a.    An Order designating the FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b.    For an Order appointing Plaintiffs' representatives and their counsel to represent the interests of the FLSA Class and State Law Classes;

    c.    For an Order finding Exelon liable to Plaintiff and the FLSA Class for unpaid overtime owed under the FLSA, as well liquidated damages in an amount equal to their unpaid compensation;

    d.    Certification of the State Law Classes pursuant to FRCP 23;

    e.    For an Order awarding attorneys' fees, costs and pre- and post-judgment interest at the highest available rates; and

      f.    For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

Date: February 27, 2019                      <u>s/Richard M. Schreiber</u>
                                               One of Plaintiffs' Attorneys

Michael A. Josephson
Texas State Bar No. 24014780
mjosephson@mybackwages.com
Richard M. Schreiber
Texas State Bar No. 24056278
rschreiber@mybackwages.com
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

     **AND**

Richard J. (Rex) Burch
Texas State Bar No. 24001807
rburch@brucknerburch.com
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile

     **AND**

Douglas M. Werman
Maureen A. Salas
**WERMAN SALAS P.C.**
77 W. Washington, Suite 1402
Chicago, IL 60602
(312) 419-1008

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I served this document via the Court's ECF System in accordance with the Federal Rules of Civil Procedure.

*/s/ Richard M. Schreiber*
**Richard M. Schreiber**